UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PABLO JOSE CASTANEDA GARCIA,<br><br>Petitioner,<br>v.<br><br>BRUCE SCOTT et al.,<br><br>Respondents. | CASE NO. 2:26-cv-03962-DGE<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) |

Before the Court is Petitioner's petition for writ of habeas corpus. (Dkt. No. 1.) For the reasons discussed herein, the Court GRANTS the petition.

## I. BACKGROUND

### A. Factual Background

Petitioner is a native and citizen of Guatemala. (Dkt. Nos. 6 at 1; 7-3 at 2.) On August 14, 2017, Petitioner, who was approximately 16 years old at the time, entered the United States near the San Ysidro port of entry. (Dkt. Nos. 6 at 2; 7-3 at 2.) The same day, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA"), charging him as

removable from the United States under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). (Dkt. Nos. 6 at 2; 7-1 at 2.) During processing, Petitioner provided immigration officials with contact information for his mother, who was living in the United States. (Dkt. No. 6 at 2.) Based on Petitioner's entry into the United States as an unaccompanied minor, Petitioner was referred to the Office of Refugee Resettlement ("ORR") for placement. (*Id.*) On September 3, 2017, Petitioner was released into the custody of his mother. (Dkt. Nos. 6 at 2; 7-2 at 2.)

On June 25, 2018, Petitioner submitted an application for relief to U.S. Citizenship and Immigration Services ("USCIS"). (Dkt. No. 6 at 2.) On April 15, 2020, an Immigration Judge ("IJ") ordered Petitioner removed to Guatemala "after Petitioner's failure to file for relief before the Immigration Court." (*Id.*) On May 12, 2020, Petitioner filed a motion to re-open and reconsider. (*Id.*) On April 13, 2021, an IJ dismissed Petitioner's immigration proceedings to allow USCIS to adjudicate his application for relief. (*Id.*)

On July 23, 2026, Immigration and Customs Enforcement ("ICE") agents detained Petitioner during a traffic stop "while assisting the Fort Myers Police Department." (Dkt. Nos. 6 at 3; 7-3 at 3; 7-5.) ICE agents concluded Petitioner "was illegally present in the United States" while at the same time acknowledging his prior removal proceedings had been terminated "by the Immigration Judge and [that he] had a pending benefit form I-589 with USCIS." (Dkt. No. 7-3 at 3.) ICE agents further identified Petitioner had a valid "temporary driver's license and a USCIS issued work permit." (*Id.*) Notwithstanding, "he was arrested and taken into ICE custody." (*Id.*) The same day, DHS issued Petitioner a new NTA, again charging him as removable under Section 212(a)(6)(A)(i) of the INA. (Dkt. Nos. 7-5; 7-6.) On July 28, 2026, Petitioner was transferred to the Northwest ICE Processing Center, where he remains. (Dkt. No.

6 at 3.) On October 28, 2026, an IJ denied Petitioner's application for relief—which included claims for asylum, withholding of removal under INA § 241(b)(3), and deferral of removal under the Convention Against Torture act—and ordered him removed to Guatemala. (Dkt. No. 6 at 3–4; 7-7.) Despite this, Respondents acknowledge they will not remove Petitioner until USCIS considers and rules upon his pending asylum application.[1] (Dkt. Nos. 5 at 4; 6 at 4.)

**B. Procedural History**

On October 15, 2026, Petitioner filed a petition for writ of habeas corpus. (Dkt. No. 1.) Petitioner has submitted a form habeas petition that identifies few facts relevant to his case, but does identify he was detained "even though his Asylum case pending" and that ICE has not provided any opportunity to seek release." (*Id.* at 6.) He asserts a due process violation and that his detention was unlawful "[w]ithout [i]ndividualized [j]ustification." (*Id.*) Petitioner asks the Court to release him from custody. (*Id.* at 7.) On October 30, 2026, Respondents filed a response. (Dkt. No. 5.)

---

[1] This likely is because of the November 25, 2024 settlement agreement in *J.O.P. v. DHS et al.*, Case No. 8:19-cv-01944-SAG, Dkt. No. 205 (D. Md. Nov. 25, 2024). The case involved a class of asylum seekers who had entered the United States as unaccompanied minors. *Id.*, Dkt. No. 199-2 at 2. The lawsuit challenged the procedures in a 2019 memorandum issued by USCIS (the "Redetermination Memo"), which provided that a child in removal proceedings who was an unaccompanied minor and who applied for asylum after turning 18 or reunifying with a legal guardian would have their asylum application rejected by USCIS for lack of jurisdiction. *Id.* The class challenged the policy for violations of the Administrative Procedure Act ("APA") and the Due Process Clause of the Fifth Amendment to the U.S. Constitution. *Id.* The settlement agreement fully rescinded the Redetermination Memo and provided that USCIS would exercise exclusive jurisdiction over class members' asylum applications and required them to be adjudicated on the merits. *Id.* at 7. The settlement also required DHS to "join or non-oppose" any class member's motion to continue or administratively close removal proceedings while USCIS adjudicates their asylum application. *Id.* at 9.

## II. LEGAL STANDARD

### A. Petition for Writ of Habeas Corpus

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

## III. DISCUSSION

Respondents agree Petitioner is entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a) and concede "[t]here is no dispute that Petitioner is entitled to a bond redetermination hearing upon request under Section 1226(a)'s implementing regulations." (Dkt. No. 5 at 2, 6.) Respondents further concede that if ordered, "the bond hearing should apply the burden of proof set forth in *Guerra*." (*Id.* at 7.)

Here, the Court finds release to be the appropriate remedy. Petitioner was re-detained after his prior removal proceeding was terminated, and "[a] noncitizen's due process protections after dismissal of prior removal proceedings cannot be less than the due process protections afforded to noncitizens subject to conditional release." *Yu et al. v. Hernandez et al.*, Case No.

2:26-cv-01372-DGE, 2026 WL 1560581 at *8 (W.D. Wash. May 22, 2026). In *Yu*, the Court cited with approval the reasoning of United States Magistrate Judge Brian Tsuchida:

> The Court finds little sense in the proposition that, merely because the government dismissed removal proceedings against Petitioner and released him with no restrictions, he is less entitled to procedural protections than would be a petitioner who remains in active removal proceedings and is subject to conditional release. As Petitioner correctly points out, 'Respondents' theory would permit DHS to erase any noncitizen's liberty interest and due process protections by moving to dismiss their prior proceedings, see 8 C.F.R. § 239.2(a), (c), and filing a new Notice to Appear.

*Id.*, citing *Lima Gamez, et al v. Hernandez et al*, Case No. 2:26-cv-01104-BAT, 2026 WL 1382362, at *5 (W.D. Wash. May 18, 2026). The Court finds Judge Tsuchida's reasoning applicable here, and further finds that application of the *Mathews* due process factors weighs in Petitioner's favor.[2]

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." *Mathews*, 424 U.S. at 335.

[2] Respondents' brief does not address the *Mathews* factors.

With respect to the first factor, individuals "who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). Moreover, the Court "finds no authority for the proposition that the dismissal of [Petitioner's] removal proceedings diminishes his liberty interest." *Yu*, 2026 WL 1560581 at *8. Petitioner has been at liberty for more than 9 years, most of his adult life, and his reliance on his freedom has created a constitutionally protected liberty interest "that cannot be extinguished without due process." *A.B.J.C. v. Hermosillo*, Case No. 2:26-CV-00185 JNW, 2026 WL 497097, at *3 (W.D. Wash. Feb. 23, 2026). As for the second factor, the risk of erroneous deprivation with respect to Petitioner's re-detention is high, given that Respondents have presented no evidence that Petitioner is either a flight risk or a danger to the community. The risk is particularly high in this case as USCIS had issued Petitioner a valid work permit and Petitioner maintained a valid driver's license while operating his vehicle. There was no reason for the ICE agents to conclude Petitioner did not have authority to be in the United States while awaiting a decision from USCIS. With respect to the third factor, Respondents' failure to provide any pre-detention process violates due process, given the high risk of erroneous deprivation and the fundamental liberty interest at stake.

Accordingly, the Court concludes, based on *Mathews*, that ordering Petitioner's release rather than ordering a bond hearing is the appropriate relief.

## IV. ORDER

Based on the foregoing, the Court GRANTS Petitioner's petition for writ of habeas corpus (Dkt. No. 1), and further ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within

ONE (1) DAY of this Order. The only conditions that may be imposed on his release are those conditions Petitioner had prior to his detention.

2. Petitioner SHALL NOT be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge.
3. Respondents shall return to Petitioner any personal property, including personal identification documents (other than a passport) and employment authorization documents (EADs).
4. Within TWENTY-FOUR (24) HOURS of this Order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody and SHALL file a copy of the conditions of supervision.

Dated this 13th day of November, 2026.

David G. Estudillo
United States District Judge